UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRANDON GRIFFITH,

Plaintiff,

v.

LIEUTENANT MITCHEL TROY, also known as Troy Mitchel, Auburn, Correctional Facility; SERGEANT HARTE, Auburn Correctional Facility; SERGEANT YORKIE, Auburn Correctional Facility; MOHAMMAD M. IQBAL; CHRIS MAYER, also known as Chris Meyers, Unit Chief Clinician, Auburn Correctional Facility; MAGGIE PITARO, formerly known as Maggie Grosso, Auburn Correctional Facility; C.O. B. SMITH, Auburn Correctional Facility; C.O. GIRVIN, Auburn Correctional Facility; BARBER; C.O. DENNIS, Auburn Correctional Facility; C.O. THOMAS, Auburn Correctional Facility; C.O. COOPER, Auburn Correctional Facility; SERGEANT/C.O. PYKE, Auburn Correctional Facility; C.O. FISHER, Auburn Correctional Facility; C.O. LARRY NOLAN, Attica Correctional Facility; C.O. PATTISON, Attica Correctional Facility; and C.O. DAVID TARBY, Auburn Correctional Facility,

9:19-CV-0354
(MAD/ML)

Defendants.

---

APPEARANCES: OF COUNSEL:

BRANDON GRIFFITH
Plaintiff, *Pro Se*
18-18 Hazen Street
East Elmhurst, New York 11370

LETITIA A. JAMES
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

CHRISTOPHER LIBERATI-CONANT, ESQ.
Assistant Attorney General

MIROSLAV LOVRIC, United States Magistrate Judge

**REPORT-RECOMMENDATION**

This matter has been referred to me for a Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge. Currently before the Court, in this civil rights action filed by Brandon Griffith ("Plaintiff") against Lieutenant Mitchel Troy, also known as Troy Mitchel, Auburn, Correctional Facility; Sergeant Harte, Auburn Correctional Facility; Sergeant Yorkie, Auburn Correctional Facility; Mohammad M. Iqbal, also known as Iqbal; Chris Mayer, also known as Chris Meyers, Unit Chief Clinician, Auburn Correctional Facility; Maggie Pitaro, formerly known as Maggie Grosso, Clinician, Auburn Correctional Facility; C.O. B. Smith, Auburn Correctional Facility; C.O. Girvin, Auburn Correctional Facility; Barber; C.O. Dennis, Auburn Correctional Facility; C.O. Thomas, Auburn Correctional Facility; C.O. Cooper, Auburn Correctional Facility; Sergeant/C.O. Pyke, Auburn Correctional Facility; C.O. Fisher, Auburn Correctional Facility; C.O. Larry Nolan, Attica Correctional Facility; C.O. Pattison, Attica Correctional Facility; and C.O. David Tarby, Auburn Correctional Facility, (collectively "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 80.) For the reasons set forth below, I recommend that Defendants' motion be granted in part and denied in part.

## TABLE OF CONTENTS

I. RELEVANT BACKGROUND ..... 1
A. Plaintiff's Claims ..... 1
B. Procedural History ..... 1
C. Statement of Undisputed Material Facts ..... 3
D. Parties' Briefing on Defendants' Motion for Summary Judgment ..... 6
II. RELEVANT LEGAL STANDARDS ..... 8
A. Standard Governing a Motion for Summary Judgment ..... 8
B. Standard Governing the Statute of Limitations ..... 11
C. Standard Governing Exhaustion of Administrative Remedies ..... 14
III. ANALYSIS ..... 17
A. Whether Plaintiff's Claims are Barred by the Statute of Limitations ..... 17
1. Eighth Amendment Deliberate Medical Indifference ..... 18
2. Eighth Amendment Excessive Force and Failure to Intervene Claims ..... 21
B. Whether Plaintiff Exhausted His Administrative Remedies ..... 21

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Liberally construed, Plaintiff's Complaint asserts the following three claims: (1) a claim of deliberate medical indifference in violation of the Eighth Amendment against Defendants Iqbal, Mayer, Mitchel, and Pitaro; (2) a claim of excessive force and failure to intervene in violation of the Eighth Amendment against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, Dennis, Nolan, and Pattison; and (3) a claim of retaliation in violation of the First Amendment against Defendants Nolan and Pattison. (Dkt. No. 1.) The Court's Decision and Order dated June 26, 2019, thoroughly outlines Plaintiff's allegations and claims. (Dkt. No. 12.)

### B. Procedural History

On March 21, 2019, Plaintiff's Complaint was filed with the Clerk of the Court. (Dkt. No. 1.) In addition, Plaintiff filed a motion for leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.) On March 22, 2019, Judge D'Agostino issued an Order denying Plaintiff's IFP application and administratively closing the action because Plaintiff had not provided a completed IFP application or paid the required filing fee. (Dkt. No. 4.) On April 3, 2019, Plaintiff filed a second IFP application (Dkt. No. 5), and on April 9, 2019, Judge D'Agostino again denied Plaintiff's IFP application as incomplete but provided Plaintiff a final opportunity to either comply with the IFP application requirements or pay the full filing fee (Dkt. No. 7).

On April 18, 2019, and on May 7, 2019, Plaintiff filed a third and fourth IFP application respectively. (Dkt. Nos. 9, 11.) On June 26, 2019, Judge D'Agostino granted Plaintiff's third IFP application and denied Plaintiff's fourth IFP application as moot. (Dkt. No. 12.) In addition, Judge D'Agostino held that the following three claims survived *sua sponte* review: (1) a claim of

deliberate medical indifference in violation of the Eighth Amendment asserted against Defendants Iqbal, Mayer, Mitchel, and Pitaro; (2) a claim of excessive force and failure to intervene in violation of the Eighth Amendment asserted against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, Dennis, Nolan, and Pattison; and (3) a claim of retaliation in violation of the First Amendment asserted against Defendants Nolan and Pattison. (*Id.*) However, the Court dismissed Plaintiff's claims against defendants Annucci, Graham, Fennessey, Geer, "Nurse Administrator," "Nurse Faculty," New York State Office of Mental Health, Tomandll, Sullivan, Attica C.F., Noeth, Quinn, and Diego. (*Id.*)

On May 29, 2020, Defendants Barber, Cooper, Dennis, Girvin, Pitaro, Harte, Mayer, Nolan, Pattison, Smith, Troy, and Yorkie filed an Answer. (Dkt. No. 42.) On August 13, 2020, an Amended Answer was filed, which added Defendant Thomas to the original Answer. (Dkt. No. 52.) On October 29, 2020, a Second Amended Answer was filed, which added Defendant Fisher to the Amended Answer. (Dkt. No. 75.)

After several failed attempts to serve Defendants Iqbal and Tarby, on November 4, 2020, summonses were reissued for them. (Dkt. No. 78.) On November 18, 2020, an acknowledgement of service was filed as to Defendant Tarby. (Dkt. No. 79.)

On December 3, 2020, Defendants Troy, Harte, Yorkie, Mayer, Pitaro, Smith, Girvin, Barber, Dennis, Thomas, Cooper, Pyke, Fisher, Nolan, and Pattison, and Tarby filed the pending motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 80.) On December 22, 2020, an acknowledgement of service was filed as to Defendant Iqbal. (Dkt. No. 88.)

On January 19, 2021, a Third Amended Answer was filed, which added Defendant Iqbal to the Second Amended Answer. (Dkt. No. 91.)

On February 3, 2021, the Court issued a Text Order, which noted that Plaintiff failed to timely file a response to the pending motion for summary judgment and, in light of Plaintiff's status as a *pro se* litigant, *sua sponte* granted Plaintiff an extension of time until February 23, 2021, to file a response. (Dkt. No. 92.) On February 25, 2021, Plaintiff filed a response in opposition to Defendants' motion. (Dkt. No. 94.)

On June 28, 2021, the Court issued a Text Order, which *sua sponte* construed the arguments set forth in Defendants' motion for summary judgment as also being applicable to the claims against Defendant Iqbal. (Dkt. No. 97.) In addition, the Court *sua sponte* granted Plaintiff leave to file any opposition as to Defendant Iqbal only, on or before July 12, 2021. (*Id.*) To date, Plaintiff has failed to file a supplemental response. (*See generally* docket sheet.)

**C. Statement of Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported by Defendants in their Statement of Material Facts and not denied by Plaintiff in his Response. (*Compare* Dkt. No. 80, Attach. 2 [Defs.' Statement of Material Facts] *with* Dkt. No. 94 [Pl.'s Response].)

1. Plaintiff was an inmate in the custody of the Department of Corrections and Community Supervision ("DOCCS") during the relevant time-period.

2. Plaintiff was housed at Auburn Correctional Facility ("Auburn C.F.") from February 24, 2015, to March 7, 2016.[1]

3. Plaintiff was transferred to Attica Correctional Facility ("Attica C.F.") on March 7, 2016.

---

[1] The Court notes that Defendants incorrectly labeled the declarations of Rachael Seguin and Concetta Partridge. The declaration of Ms. Seguin (which did not include any attached exhibits) was filed at Dkt. No. 80, Attach. 4. The declaration of Ms. Partridge and exhibit A, was filed at Dkt. No. 80, Attach. 3.

4. Plaintiff was transferred from Attica C.F. to Auburn C.F. on March 28, 2016, and then to Five Points Regional Mental Health Unit on March 31, 2016.

5. The DOCCS Inmate Grievance Program ("IGP") was established in accordance with Correction Law § 139. The IGP procedure and policies are contained in DOCCS Directive 4040 and codified at 7 N.Y.C.R.R. Part 701.

6. Any inmate personally affected by an issue is entitled to file a grievance in accordance with the grievance procedure outlined in Directive 4040 and Part 701.

7. Except where expedited procedures apply, the inmate grievance process is a three-step process.

8. At step one, the inmate must file a grievance within twenty-one calendar days of the alleged incident, at the facility where the inmate is housed. Once the Inmate Grievance Review Committee ("IGRC") receives a grievance, it logs it and assigns it a number. The IGRC has sixteen days to informally resolve the grievance or hold a hearing to resolve the grievance. The IGRC's determination is then logged and forwarded to the inmate.

9. At step two, if the inmate wishes to appeal the IGRC determination, he must submit the appeal to the Superintendent of the facility within seven days of receiving the IGRC's response. The Superintendent has twenty calendar days to issue a response.

10. At step three, if the inmate wishes to appeal the Superintendent's determination, within seven days of receiving the Superintendent's response, he must submit to the facility IGRC, an appeal to the Central Office Review Committee ("CORC").

11. An expedited procedure applies to grievances alleging harassment, misconduct, or unlawful discrimination. Such grievances are forwarded directly to the facility Superintendent, who has twenty-five calendar days to respond. The procedures for filing an appeal of a

harassment/misconduct/discrimination allegation are otherwise identical to those set forth above in paragraph 10.

12. If an incarcerated individual fails to receive a response to an expedited grievance from the Superintendent within the specified time period, the failure to respond may be construed as a denial, and the incarcerated individual must still appeal to CORC to exhaust their administrative remedies.

13. The allegations made by Plaintiff in the Complaint are the proper subject for a grievance under DOCCS's expedited grievance procedures as outlined at 7 NYCRR § 701.1, *et seq*.

14. The Attica C.F. grievance office keeps records of all documents related to filed grievances as they are created or received. The Attica C.F. grievance office has on file all grievance documents from January 1, 2016, to present.

15. The CORC computer database likewise contains records of grievance appeals for at least the current year and previous four calendar years, in accordance with Directive 4040. Expedited grievances are included within this record.

16. Concetta Partridge, Attica C.F. IGP Director, reviewed the Attica C.F. grievance records and determined that those records contain no grievance related to the events that Plaintiff alleges occurred on or about March 21, 2016.

17. Rachael Seguin, Assistant Director of the IGP, searched CORC's records and determined that those records do not contain any record of an appeal from Plaintiff of a Superintendent's determination related to the events that allegedly occurred on or about March 21, 2016.

18. Attica C.F. grievance records indicate that Plaintiff filed two grievances dated March 16, 2016, and one on March 24, 2016. The grievance dated March 24, 2016, was titled "strip frisk wrong."

19. CORC's records show that Plaintiff appealed one grievance filed at Attica C.F., which was unrelated to Plaintiff's allegations of staff misconduct on March 21, 2016. The grievance that Plaintiff appealed was filed on March 16, 2016.[2]

20. Plaintiff did not file a grievance about the alleged March 21, 2016, incident involving defendants Pattison and Nolan, and did not file an appeal to CORC related to said incident.

### D. Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1. Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert three arguments. (*See generally* Dkt. No. 80, Attach. 9 [Defs.' Mem. of Law].)

First, Defendants argue that Plaintiff's Eighth Amendment medical indifference claims against Defendants Iqbal,[3] Mayer, Mitchel, and Pitaro are barred by the statute of limitations. (*Id.*) More specifically, Defendants argue that 42 U.S.C. § 1983 actions filed in New York are subject to a three-year statute of limitations and Plaintiff commenced this action on March 21,

---

[2] Defendants support this fact by citing to exhibits A and B attached to the declaration of Ms. Seguin. (Dtk. No. 80, Attach. 2 at ¶ 19.) As set forth in note 1, *supra*, Defendants failed to attach any exhibits to the declaration of Ms. Seguin. (*See generally* Dkt. No. 80, Attach. 4.) However, this fact is support by other evidence in the record. (Dkt. No. 80, Attach. 4 at ¶¶ 16-17.)

[3] While Defendant Iqbal is not listed in Defendants' motion, Defendants argued that the claims against him should be dismissed. (Dkt. No. 80.) In addition, the Court provided notice that it intended to construe Defendants' motion as also applicable to Defendant Iqbal and provided Plaintiff an opportunity to respond. (Dkt. No. 97.)

2019. (*Id.*) Defendants argue that because Plaintiff's claims against Defendants Iqbal and Mayer pertain to Plaintiff's release from the Residential Crisis Treatment Program ("RCTP") to the Special Housing Unit ("SHU"), where he had access to bedsheets on October 15, 2015, and October 21, 2015, those claims expired on October 15, 2018, and October 21, 2018. (*Id.*) Moreover, Defendants argue that the Eighth Amendment medical indifference claim against Defendant Mitchel expired on December 21, 2018, because it arises from an incident that occurred on December 21, 2015. (*Id.*) Further, Defendants argue that the Eighth Amendment medical indifference claim against Defendant Pitaro expired, at the latest, in December 2018, because, Plaintiff alleges that Defendant Pitaro was his counselor from October 2015 through December 2015. (*Id.*)

Second, Defendants argue that Plaintiff's Eighth Amendment excessive force and failure to intervene claims against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, and Dennis are also barred by the statute of limitations. (*Id.*) More specifically, Defendants argue that the Eighth Amendment excessive force and failure to intervene claims against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, and Dennis, are based on incidents that occurred on December 1, 2015, December 6, 2015, December 21, 2015, and January 2, 2016, and thus the statute of limitations regarding those incidents expired on December 1, 2018, December 6, 2018, December 21, 2018, and January 2, 2019. (*Id.*)

Third, Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his First and Eighth Amendment claims against Defendants Pattison and Nolan. (*Id.*) More specifically, Defendants argue that the Prison Litigation Reform Act ("PLRA") requires prisoners who bring a lawsuit in federal court to first exhaust their available administrative

remedies; this requirement is mandatory such that, failure to comply subjects the complaint to dismissal. (*Id.*) Defendants argue that DOCCS's IGP is the administrative remedy available to inmates for purposes of the PLRA. (*Id.*) Defendants argue that Plaintiff did not file a grievance regarding the alleged incident on March 21, 2016, which forms the basis of his First and Eighth Amendment claims. (*Id.*) In addition, Defendants argue that Plaintiff did not appeal any alleged grievance regarding the incident on March 21, 2016, to CORC. (*Id.*)

#### 2. Plaintiff's Response to Defendants' Motion for Summary Judgment

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff "request[s that] the summary judgement not be granted," "objects" to the motion, and stated that he does not know how to respond to the motion. (Dkt. No. 94.) Plaintiff did not file an opposition memorandum of law or any document that responded to Defendants' legal arguments. (*See generally* Dkt. No. 94.) In addition, Plaintiff did not file any response regarding the Court's *sua sponte* construction of Defendants' motion as also being applicable to Defendant Iqbal. (*See generally* docket sheet.)

## II. RELEVANT LEGAL STANDARDS

### A. Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4] As for the materiality requirement, a dispute of fact is

4 As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted). As the Supreme Court has explained, "[The non-movant] must do more than simply

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[5] (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.)[6] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[7]

---

show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

5 *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

6 *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

7 *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(a)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1(b) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[8]–even when the non-movant was proceeding *pro se*.[9]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(a)(3).[10] Stated another way, when a non-movant fails to oppose a legal argument

---

8 Among other things, Local Rule 56.1(b) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 56.1(b).

9 *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

10 *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[a][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-

asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting . . . of the motion."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B. Standard Governing the Statute of Limitations**

The Supreme Court has stated that for actions brought under 42 U.S.C. § 1983, the applicable limitations period is derived from the general or residual statute of limitations for personal injury actions under the laws of the forum state. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).

New York personal injury claims of an otherwise unspecified nature are governed by a three-year statute of limitations. *See* N.Y. C.P.L.R. 214(5). Actions brought under 42 U.S.C. § 1983, are governed by the applicable limitations period derived from the laws of New York to personal injury claims of an otherwise unspecified, which is three years. *See* N.Y. C.P.L.R. 214(5); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (quoting *Owens*, 488 U.S. at 249-50); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995); *Lugo v. Senkowski*, 114

---

0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing *Pinaud*, 52 F.3d at 1156; *Owens*, 488 U.S. at 249-50).

While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Under federal law, a claim arising under 42 U.S.C. § 1983 accrues "'when the plaintiff 'knows or has reason to know of the injury which is the basis of his action.'" *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977).

However, the continuing violation doctrine may apply to alter the effect of the statute of limitations." *Douglas v. Bughrara*, 11-CV-1535, 2013 WL 5347285, at *3 (N.D.N.Y. Sept. 23, 2013) (Khan, J.). The continuing violation doctrine may apply when a prisoner alleges that a series of acts taken together constitute an Eighth Amendment violation. *Shomo v. New York.,* 579 F.3d 176, 182 (2d Cir. 2009).

The continuing violation doctrine, where applicable, is an "exception to the normal knew-or-should-have-known accrual date" if there is evidence of an ongoing discriminatory policy or practice. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). The continuing violation doctrine does not apply to "discrete acts," even where those discrete acts are a part of a "serial violation," but applies solely to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, 802 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). When the doctrine applies, the limitations period begins to run when the defendant has engaged in "enough activity to make out an actionable . . . claim," as long as the plaintiff has alleged some non-time-barred acts which contributed to the alleged

violation. *Id*. (quoting *Morgan*, 536 U.S. at 117; *Harris*, 186 F.3d at 250). A continuing violation cannot "be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250 (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).

"The continuing violation doctrine is generally disfavored in this Circuit." *Benyi v. New York*, 20-CV-1463, 2021 WL 1406649, at *10 (N.D.N.Y. Mar. 23, 2021) (Lovric, M.J.), *report and recommendation adopted*, 20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (Hurd, J.); *see Town of Ramopo v. Town of Clarkstown*, 16-CV-2004, 2017 WL 782500, at *5 (S.D.N.Y. Feb. 27, 2017); *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (quoting *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)) ("[C]ourts in the Second Circuit 'have been loath to apply [the continuing violation doctrine] absent a showing of compelling circumstances.'").

Further, under New York law, equitable tolling applies "where a plaintiff has been prevented in some extraordinary way from exercising rights," such that "it would have been impossible for a reasonably prudent person to learn about his or her cause of action." *Pearl*, 296 F.3d at 85. In a related but slightly different vein, equitable estoppel is available "where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing the lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.3d 76, 85 (2d Cir. 1986); *see also Abbas*, 480 F.3d at 642 (stating that equitable estoppel applies when a "plaintiff was induced by fraud, misrepresentation or deception to refrain from filing a timely action"). Under either doctrine, "[d]ue diligence on the part of the plaintiff in bringing an action . . . is an essential element of equitable relief." *Abbas*, 480 F.3d at 642 (quoting *Doe v. Holy See (State of Vatican City)*, 17 A.D. 3d 793, 796 (N.Y. App. Div. 3d Dep't 2005)).

### C. Standard Governing Exhaustion of Administrative Remedies

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) ("The [PLRA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly. *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "'using all steps that the [government] agency holds out, and doing so properly'" (quoting *Woodford*, 548 U.S. at 90)). In New York State prisons, DOCCS has a well-established three-step IGP. 7 N.Y.C.R.R. § 701.5.

First, an inmate must file a complaint with the facility IGP clerk ("IGPC") within twenty-one days of the alleged occurrence. 7 N.Y.C.R.R. § 701.5(a)(1). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a

hearing within sixteen calendar days of receipt of the grievance, *id.* § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id.* § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id.* § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id.* § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id.* § 701.5(d)(3)(ii).

Grievances claiming employee harassment, including claims of excessive force, "are of particular concern to the administration of [DOCCS] facilities," and subject to an expedited procedure whereby the grievance goes directly to the facility superintendent. *Id.* § 701.8; *see, e.g., Torres v. Carry*, 691 F. Supp. 2d 366 (S.D.N.Y. 2009) (Section 701.8 has been found applicable to claims of excessive force). The superintendent is required to initiate an in-house investigation by higher-ranking supervisory personnel; request an investigation by the Inspector General's office; or request an investigation by the New York State Police Bureau of Investigation if the superintendent determines that criminal activity may be involved. 7 N.Y.C.R.R. § 701.8(d).

A grievance referred to the superintendent and determined to be an allegation of harassment may not be withdrawn and must be addressed by the superintendent. *Id.* The

superintendent is required to render a decision on the grievance within twenty-five calendar days, and extensions may be granted only with the consent of the grievant. *Id.* § 701.8(f). If the superintendent fails to respond within the required twenty-five days, the grievant may appeal the grievance to CORC by "filing a notice of decision to appeal (form #2133) with the inmate grievance clerk." *Id.* § 701.8(g). If the grievant wishes to appeal the superintendent's response to CORC, he must do so within seven calendar days of receipt of that response. *Id.* § 701.8(h).

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotations marks and citations omitted).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotation marks and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks and citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 1859-60. First,

"an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because non-exhaustion is an affirmative defense, the defendants bear the burden of showing that a prisoner has failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216. The plaintiff must then establish the IGP grievance procedure was unavailable to him under *Ross*. *Id.*

## III. ANALYSIS

### A. Whether Plaintiff's Claims are Barred by the Statute of Limitations[11]

After carefully considering the matter, I recommend the Defendants' motion for summary judgment seeking dismissal of Plaintiff's untimely claims be granted in part and denied in part.

---

11 A defense predicated upon the relevant statute of limitations is affirmative in nature, and hence waivable. *Santos v. Dist. Council of New York City, et. al.*, 619 F.2d 963, 967 n. 5 (2d Cir.1980). Here, Defendants' Answer asserts a defense based upon the relevant statute of limitations. (*See generally* Dkt. Nos. 42, 52, 75, 91.) Therefore, Defendants have not waived or forfeited a statute of limitations argument.

### 1. Eighth Amendment Deliberate Medical Indifference

Plaintiff's Complaint was filed with the Clerk of the Court on March 21, 2019. (Dkt. No. 1.) However, pursuant to the prison mailbox rule, the Complaint is deemed to have been filed when it was delivered to prison officials for filing. *See Sides v. Paolano,* 782 F. App'x 49, 50 (2d Cir. 2019) ("Under the prison mailbox rule, a *pro se* prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court."); *Douglas v. Bughrara*, 11-CV-1535, 2013 WL 5347285, at *3 (N.D.N.Y. Sept. 23, 2013) (Kahn, J.) ("The prison mailbox rule starts the statute of limitations analysis in prisoner civil rights actions. A *pro se* inmate's motion is deemed filed on the date the papers were given to prison officials." (citation omitted)). "The date that a complaint is signed is the date that the prisoner is presumed to have handed that complaint to a prison guard for mailing." *Jackson v. Yando*, 13-CV-1279, 2014 WL 3955734, at *5 (N.D.N.Y. Aug. 13, 2014) (D'Agostino, J.) (citing *Shaw v. Superintendent, Attica Corr. Facility*, 03-CV-0610, 2007 WL 951459, at *3 n.3 (N.D.N.Y. Mar. 28, 2007) (McCurn, J.); *Garraway v. Broome Cnty.*, 03-CV-0681, 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006) (McAvoy, J.)).

Here, Plaintiff's Complaint and IFP application are dated December 1, 2018. (Dkt. No. 1 at 15; Dkt. No. 2 at 2.) As a result, Plaintiff's Complaint is presumed to have been handed to a prison guard for mailing on December 1, 2018.[12] *See Johnson v. Bieling*, 20-CV-1124, 2021 WL 1841470, at *8 n.7 (N.D.N.Y. Jan. 6, 2021) (Lovric, M.J.) (deeming the complaint to have been filed on the date that it was signed), *report and recommendation adopted by*, 2021 WL

---

[12] Defendants failed to set forth any argument or identify any evidence in the record that would rebut this presumption or account for the approximately three-and-one-half month lapse between when Plaintiff presumably handed the Complaint to a prison guard for filing—on December 1, 2018—and when it was filed with the Clerk of the Court—on March 21, 2019. (*See generally* Dkt. No. 80.)

1840591 (N.D.N.Y. May 7, 2021) (Suddaby, C.J.); *Encarnacion v. Goord*, 12-CV-6180, 2020 WL 6291473, at *4 (W.D.N.Y. Oct. 27, 2020) (deeming the action to have been commenced on the date that the complaint and application to proceed *in forma pauperis* were signed and dated); *Staton v. Holzbach*, 20-CV-0631, 2020 WL 6119382, at *2 (D. Conn. Oct. 16, 2020) (holding that because the plaintiff "signed his complaint on April 20, 2020[,] and presumably gave it to prison officials for mailing on that date, any claims that accrued before April 20, 2017[,] may be time-barred."); *Mayandeunas v. Bigelow*, 18-CV-1161, 2019 WL 3955484, at *4 (N.D.N.Y. Aug. 22, 2019 (Suddaby, C.J.) (holding that "the prisoner's federal court complaint was signed (which, pursuant to the Prison Mailbox Rule, is the date of the filing of the prisoner's court action)."). Therefore, Plaintiff's claims related to incidents that occurred on or after December 1, 2015, are timely, and those related to incidents that occurred before December 1, 2015, are untimely.

The Complaint alleges that on September 22, 2015, Plaintiff was placed in the RTCP observation unit at Auburn Correctional Facility. (Dkt. No. 1 at 16.) Plaintiff alleges that on October 15, 2015, he informed Defendant Iqbal that he was suicidal and that, if he was returned to the SHU, he would "do all in [his] power to take [his] life." (*Id.* at 17.) Plaintiff also alleges that Defendant Iqbal then released Plaintiff to the SHU, Defendant Mayer escorted Plaintiff to the SHU and administered a suicide screening test. (*Id.*) Plaintiff alleges that although he "failed the SHU suicide prevention," Defendant Mayer left him alone in the SHU cell and that within forty-five minutes, Plaintiff attempted suicide by hanging himself with the bed sheets. (*Id.*) Plaintiff alleges that he was "tak[en] to medical . . . but not sent to the hospital as directive commands" and "[l]eft without medical treatment." (*Id.*)

Plaintiff alleges that on October 21, 2015, Defendant Iqbal again released him from the RTCP to the SHU notwithstanding Plaintiff's warning that he would attempt suicide. (Dkt. No. 1 at 18.) Plaintiff alleges that Defendant Mayer again placed him in the SHU cell after Plaintiff told Defendant Mayer that he would use the bed sheets to kill himself. (*Id.*) Plaintiff alleges that approximately one hour after he arrived at the SHU on October 21, 2015, he hung himself. (*Id.*) Plaintiff also alleges that he was brought to "medical" but "not sent to [an] outside hospital" and "denied proper medical attention." (*Id.*)

Plaintiff alleges that on December 21, 2015, he experienced asthma symptoms and Defendant Mitchel refused to provide him with his inhaler. (Dkt. No. 1 at 20.)

Finally, Plaintiff alleges that Defendant Pitaro "disregard[ed Plaintiff's] mental history," "refus[ed] to recognize[] [Plaintiff's] mental illness, suicidiality [sic] and long drawn out history of psychiatric hospitalizations." (Dkt. No. 1 at 19.) Plaintiff alleges that Defendant Pitaro told Plaintiff to "just kill [him]self already [because] she is sick of dealing with [him]." (*Id.*) The time-period over which Defendant Pitaro provided care to Plaintiff is not clear from the Complaint, however, it appears to cover approximately October 2015 through at least, December 3, 2015. (*Id.*)

Plaintiff's medical indifference claims against Defendants Iqbal and Mayer, which relate to incidents that occurred before December 1, 2015, are untimely.[14] However, resolving all

[14] Moreover, I find that the continuing violation doctrine does not apply to Plaintiff's Eighth Amendment deliberate medical indifference claims against Defendants Iqbal and Mayer. Plaintiff does not allege the existence of an ongoing policy of deliberate indifference to his serious medical needs and point to non-time-barred acts taken in furtherance of the policy. *Shomo,* 579 F.3d at 182. Instead, Plaintiff's allegations with regard to Defendants Iqbal and Mayer are discrete acts. Plaintiff does not allege, and has not cited any evidence to support the contention, that the acts are part of an ongoing policy.

Further, although not raised by Plaintiff but given his status as a *pro se* litigant, I have carefully reviewed the Complaint, and find no basis to invoke equitable tolling or equitable

ambiguities and drawing all reasonable inferences in Plaintiff's favor, as the Court must at this juncture, Plaintiff's medical indifference claims against Defendants Mitchel and Pitaro, which relate to incidents that occurred (at least in part) after December 1, 2015, are timely. As a result, I recommend that Defendants' motion for summary judgment seeking dismissal of Plaintiff's medical indifference claims as untimely be granted to the extent that it relates to Defendants Iqbal and Mayer and denied to the extent that it relates to Defendants Mitchel and Pitaro.

**2. Eighth Amendment Excessive Force and Failure to Intervene Claims**

As set forth in Judge D'Agostino's decision and order dated June 26, 2019, Plaintiff's surviving excessive force and failure to intervene claims relate to incidents that occurred on December 1, 2015, December 3, 2015, December 21, 2015, January 4, 2016, and March 21, 2106. (Dkt. No. 12 at 13-15.)

As set forth above in Part III.A.I. of this Report-Recommendation, based on the prison mailbox rule, the Complaint is presumed to have been filed on December 1, 2018. Therefore, Plaintiff's claims related to incidents that occurred on or after December 1, 2015, are timely. As a result, I recommend that Defendants' motion for summary judgment seeking dismissal of those claims as untimely, be denied.

**B. Whether Plaintiff Exhausted His Administrative Remedies**

After carefully considering the matter, I recommend granting Defendants' motion for summary judgment on Plaintiff's First and Eighth Amendment claims against Defendants Nolan and Pattison for failure to exhaust administrative remedies, for the reasons stated in Defendants'

---

estoppel to the applicable limitations period. More specifically, there is no evidence that Plaintiff was "prevented in some extraordinary way" from learning about the existence of his Eighth Amendment claims, or any basis to apply equitable estoppel because there is no evidence that Defendants' "conduct caused him to delay bringing the lawsuit."

memorandum of law.[15] (Dkt. No. 80, Attach. 9.) To those reasons, I add the following analysis, which is intended to supplement but not supplant Defendants' reasons.

The Complaint alleges that on March 21, 2016, Defendants Nolan and Pattison attacked him because he filed grievances against Auburn C.F. staff. (Dkt. No. 1.) However, there is no genuine dispute of fact that Plaintiff did not file a grievance regarding the alleged March 21, 2016, incident. (Dkt. No. 1; Dkt No. 80, Attach. 3 at ¶¶ 10-14; Dkt. No. 94.) In addition, Plaintiff did not appeal any grievance regarding the alleged incident on March 21, 2016, to CORC. (Dkt. No. 80, Attach. 4 at ¶¶ 16-17.)

As a result, I recommend that Defendants' motion for summary judgment of Plaintiff's First and Eighth Amendment claims against Defendants Nolan and Pattison be granted because Plaintiff failed to exhaust his administrative remedies before commencing this action. *See Cicio v. Wenderlich*, 714 F. App'x 96, 97-98 (2d Cir. 2018) (citing 7 N.Y.C.R.R. § 701.6(g)) (holding that where the plaintiff claimed he filed a grievance directly with the IGRC but the IGRC had no receipt of the grievance, the plaintiff admitted that he never received a response and, rather than appeal, he commenced the lawsuit, the "situation was not so opaque that it became 'incapable of use' because '[w]hen a prisoner has filed a grievance but receives no response, the regulations provide a right of appeal.'").

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 80) be **GRANTED** with respect to (1) Plaintiff's Eighth Amendment medical indifference claims

---

15 Although Plaintiff was released after filing the Amended Complaint, the PLRA's exhaustion requirement still applies because he was confined when he filed this lawsuit. *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (citation omitted); *see also Gonzalez v. Morris*, 14-CV-1438, 2018 WL 1353101, at *3 n.12 (N.D.N.Y. Mar. 15, 2018) (Sharpe, J.), *aff'd*, 824 F. App'x 72 (2d Cir. 2020).

against Defendants Iqbal and Mayer, which I find to have been untimely, and (2) Plaintiff's First Amendment and Eighth Amendment claims against Defendants Nolan and Pattison based on Plaintiff's failure to exhaust his administrative remedies; and **DENIED** with respect to (1) Plaintiff's Eighth Amendment medical indifference claims against Defendants Mitchel and Pitaro, and (2) Eighth Amendment excessive force and failure to intervene claims against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, and Dennis; it is further respectfully

**RECOMMENDED** that Defendants Iqbal, Mayer, Nolan, and Pattison be terminated from the caption of the case; it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[16]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 30, 2021
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

16 The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).