**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**BRANDON GRIFFITH,**

                                        **Plaintiff,**

     **vs.**

                                                                    **9:19-CV-00354**
                                                                    **(MAD/ML)**

**MITCHEL TROY,** *Lieutenant, Auburn*
*Correctional Facility*, **HARTE,** *Sergeant,*
*Auburn Correctional Facility*, **MOHAMMAD**
**M. IQBAL, CHRIS MAYER,** *Unit Chief Clinician,*
*Auburn Correctional Facility*, **MAGGIE**
**PITARO,** *Clinician, Auburn Correctional*
*Facility*, **B. SMITH,** Correctional Officer,
*Auburn Correctional Facility*, **GIRVIN,**
*Correctional Officer, Auburn Correctional*
*Facility*, **BARBER, DENNIS,** *Correctional*
*Officer, Auburn Correctional Facility*, **THOMAS,**
*Correctional Officer, Auburn Correctional Facility*,
**COOPER,** *Correctional Officer, Auburn*
*Correctional Facility*, **PYKE,** *Sergeant, Auburn*
*Correctional Facility*, **FISHER,** *Correctional Officer,*
*Auburn Correctional Facility*, **LARRY NOLAN,**
*Correctional Officer, Attica Correctional Facility*,
**PATTISON,** *Correctional Officer, Attica Correctional*
*Facility*, **and DAVID TARBY,** *Correctional Officer,*
*Auburn Correctional Facility*,

                                        **Defendants.**

_____

**APPEARANCES:**                                        **OF COUNSEL:**

**BRANDON GRIFFITH**
0000263241
Westchester County Jail
P.O. Box 10
Valhalla, New York 10595
Plaintiff, *pro se*

1

**OFFICE OF THE NEW YORK**
**STATE ATTORNEY GENERAL**
New York State Attorney General
The Capitol
Albany, New York 12224
Attorneys for Defendants

**CHRISTOPHER LIBERATI-CONANT,**
**AAG**

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 21, 2019, Plaintiff, Brandon Griffith, filed this 42 U.S.C. § 1983 action *pro se* against Defendants alleging various civil rights violations. Dkt. No. 1. Plaintiff also filed an incomplete application to proceed *in forma pauperis*. Dkt. No. 2. After Plaintiff submitted a completed application, the Court granted Plaintiff's application to proceed *in forma pauperis* and held that only three of Plaintiff's claims survived initial review: (1) Plaintiff's Eighth Amendment deliberate medical indifference claims asserted against Defendants Iqbal, Mayers, Mitchel, and Pitaro (Grosso); (2) Plaintiff's Eighth Amendment excessive force and failure to intervene claims asserted against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, Dennis, Nolan, and Pattison; and (3) Plaintiff's First Amendment retaliation claims asserted against Defendants Nolan and Pattison. Dkt. No. 12.

On December 3, 2020, Defendants moved for summary judgment on Plaintiff's remaining three claims. On July 30, 2021, Magistrate Judge Lovric issued a Report-Recommendation recommending that Defendants' motion be granted-in-part and denied-in-part. Dkt. No. 99. Both

parties filed objections to the Report-Recommendation.  Dkt. Nos. 104, 108.  As set forth below,

the Report-Recommendation is adopted-in-part and rejected-in-part.

## II. BACKGROUND

On or about September 22, 2015,[1] while incarcerated in Auburn Correctional Facility

("Auburn C.F."), Plaintiff was placed in the Residential Treatment Crisis Prevention ("RTCP")

observation unit.  Dkt. No. 1 at 16.  On October 15, 2015, Defendant Dr. Iqbal spoke with

Plaintiff in the RTCP cell.  *Id*. at 17.  Plaintiff informed Defendant Iqbal that he was suicidal and

that, if he was returned to the Special Housing Unit ("SHU"), he would "do all in [his] power to

take [his] life."  *Id*.  Defendant Iqbal responded by releasing Plaintiff to SHU.  *Id*.  Defendant

Unit Chief Clinician Chris Mayers escorted Plaintiff to SHU and administered a suicide

screening test.  *Id*.  Although Plaintiff "failed SHU suicide prevention," Defendant Mayers

left Plaintiff alone in his SHU cell.  *Id*.  Within forty-five minutes, Plaintiff attempted suicide by

hanging himself with the bed sheets.  *Id*.  Plaintiff was "tak[en] to medical . . . but not sent to

the hospital as directive commands" and "[l]eft without medical treatment."  *Id*.

On October 21, 2015, Defendant Iqbal again released Plaintiff from the RTCP to the SHU

notwithstanding Plaintiff's warning that he would attempt suicide.  *Id*. at 18.  Defendant Mayers

again placed Plaintiff in the SHU cell after Plaintiff told him that he would use the bed sheets to

kill himself.  *Id*.  Defendant Mayers responded by directing a SHU sergeant to "give [Plaintiff] all

his sheets."  *Id*.  Approximately one hour after Plaintiff arrived at his SHU cell, he hanged

---

[1] Plaintiff did not submit an opposition to Defendants' statement of material facts.  *See* Dkt. No.
94.  However, Defendants' statement of material facts does not address any of the factual
allegations alleged in the complaint.  *See* Dkt. No. 80-2.  Thus, the factual background is largely
taken from the Court's initial review of Plaintiff's complaint on June 26, 2019.  Dkt. No. 12.

himself.  *Id*.  Defendant Deputy Superintendent of Auburn C.F. Fennessey found Plaintiff and directed a correctional officer to "cut [him] down."  *Id*.  Plaintiff was brought to "medical" but "not sent to [an] outside hospital" and "denied proper medical attention."  *Id*.

Plaintiff again attempted suicide in the RTCP on or about November 8, 2015.  *Id*.  He hanged himself in the shower and "was revived by smelling salt[s]" but provided "no other medical treatment."  *Id*.  On or about November 21, 2015, Plaintiff swallowed a paper clip.  *Id*.  Because the paper clip became lodged in Plaintiff's throat, he was transported to Upstate University Hospital in Syracuse, New York, for surgery.  *Id*.

On December 1, 2015, approximately one hour before lunch, Plaintiff was assaulted by Defendant Sergeant Yorkie.  *Id*.  Plaintiff's hands were "mangled and scarred" as a result of the assault.  *Id*.  While serving Plaintiff lunch at his cell, Defendant Correctional Officer Girvin "horse[-]kicked]" the slot in the cell door while Plaintiff's hands were inside, "causing deep puncturing wounds."  *Id*. at 19.  Plaintiff was denied medical treatment for his injuries.  *Id*.

During her treatment of Plaintiff, Defendant RTCP Crisis Counselor Maggie Pitaro ignored Plaintiff's mental health history, refused to recognize Plaintiff's mental illness, and did not acknowledge his suicidal triggers.  *Id*. at 19.  Although it is not clear from the Complaint when Defendant Pitaro began treating Plaintiff or for how long she remained his counselor, she was at least Plaintiff's counselor in and around October 2015 through December 2015.  *Id*.

On December 3, 2015, Plaintiff "was once again sent out of RTCP by the treatment team" and failed the suicide screening test.  *Id*. at 19.  Nevertheless, Plaintiff was housed in SHU, where he attempted suicide three days later by swallowing a razor blade.  *Id*.  Plaintiff also attempted to

hang himself before a correctional officer thwarted his efforts.  *Id*.  Plaintiff was then escorted to

the "transport depot" where Defendants Lieutenant Troy Mitchel, Sergeant Harte, and

Correctional Officers Cooper and Dennis met him.  *Id*.  Defendant Mitchel directed Plaintiff "to

go thru [sic] with the strip process."  *Id*. at 20.  Defendant Mitchel then conducted a strip search,

during which he squeezed Plaintiff's genitals "harder and harder" and directed racial slurs and

threats at him.  *Id*.  Defendants Harte, Cooper, and Dennis witnessed the incident without

intervening, and Plaintiff was not provided any medical treatment following the assault.  *Id*.

Although Plaintiff reported the incident directly to Auburn C.F. Superintendent Graham "the

following week," Graham did not take any corrective action.  *Id*.  Plaintiff also told Auburn

Captain Diego about the sexual assault by Defendant Mitchel.  *Id*. at 24.  Captain Diego allegedly

only "talked to" Defendant Mitchel about the incident, which Plaintiff alleges was "not

sufficient."  *Id*.

On December 21, 2015, Defendants Mitchel, Pyke, Fisher, and Tarby poured gallons of

water over Plaintiff's head.  *Id*. at 20.  Plaintiff experienced asthma symptoms during the incident,

but Defendant Mitchel refused to provide him with his inhaler.  *Id*.  Defendant Mitchel then

directed Defendant Fisher to fabricate a misbehavior report accusing Plaintiff of possessing an

altered razor blade.  *Id*. at 21.  Plaintiff began a hunger strike on that date that lasted until January

26, 2016.  *Id*.  On January 26, 2016, Dr. Geer "removed [Plaintiff] off hunger strike."  *Id*. at 23.

Between December 6, 2015 and January 26, 2016, Plaintiff "was denied showers, dental

minimum care (such as finger brushing, any mouthwash, floss), running water, soap, washing

water, no exercise, heat or warmth or any basic minimal elements of hygiene."  *Id*.

Defendant Mitchel assaulted Plaintiff on January 4, 2016, while directing racial slurs towards him and insulting his religion. *Id*. Defendants Harte, Smith, Thomas, and Barber witnessed the assault and did not intervene on Plaintiff's behalf. *Id*.

Between January 27, 2016 and March 7, 2016, religious publications (described by Plaintiff as "Nation of Gods and Earths lessons" and "God Centered Culture necessitated material") were withheld from Plaintiff. *Id*. at 22. Plaintiff was placed on pen deprivation on February 12, 2016, and denied a haircut on February 13, 2016, both in retaliation for Plaintiff's filing of grievances. *Id*. On an unidentified date while Plaintiff was incarcerated in Auburn C.F., Defendant Quinn ordered Plaintiff to be transferred to the RTCP, where he was stripped in front of four or five other officers and then placed into a cell that had urine on the mattress. *Id*. at 24.

On or about March 7, 2016, Plaintiff was transferred from Auburn C.F. to Attica Correctional Facility ("Attica C.F."). *Id*. Upon arriving, Defendants Correctional Officers Nolan and Pattison threatened and intimidated Plaintiff by telling him that they were aware of the grievances Plaintiff had filed against their "friends in Auburn [C.F.]," and that Plaintiff's stay at Attica C.F. would be "a dangerous one." *Id*. On or about March 21, 2016, Defendants Nolan and Pattison "attacked [Plaintiff] with strike[s] to the body and skull." *Id*. During the assault, Defendants used racial slurs and told Plaintiff that he should "stop writing" grievances or else he would "find [himself] hung." *Id*. Plaintiff notified Attica C.F. Superintendent Noeth about the assault by Defendants Nolan and Pattison while Superintendent Noeth made rounds in the SHU. *Id*. Plaintiff claims that Superintendent Noeth disregarded the information and did not investigate the incident. *Id*.

Attica C.F. grievance records indicate that Plaintiff filed two grievances on March 16, 2016 and one on March 24, 2016.  Dkt. No. 80-2 at ¶ 18.  CORC records show that Plaintiff appealed one of the grievances filed at Attica C.F. on March 16, 2016.  *Id*. at ¶ 19.  Plaintiff did not appeal his remaining grievances.  *Id*. at ¶ 20.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322

F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* at 554 (quoting *Anderson*, 477 U.S. at 252) (emphasis in original). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.     Statute of Limitations**

*1. Governing Law*

"[T]he limitations period for § 1983 claims is borrowed from state law, which, in the case of New York, confers only a three-year period." *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018) (citing *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)). "Section 1983 claims brought in New York ordinarily accrue when the 'plaintiff knows or has reason to know of the injury' on which his claim is based." *Sides v. Paolano*, 782 Fed. Appx. 49, 50 (2d Cir. 2019) (citing *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015)).

"Under the prison mailbox rule, a *pro se* prisoner's complaint is deemed filed upon its delivery to prison authorities for transmittal to the district court." *Id*. (citing *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993)). "That date of delivery is presumed to be the date that the inmate signs his or her complaint." *Brown v. Smithem*, No. 15-CV-1458, 2017 WL 1155825, *4 (N.D.N.Y. Feb. 28, 2017) (citing *Johnson v. Connolly*, No. 9:07-CV-0158, 2008 W L 724167, *7 (N.D.N.Y. Mar. 17, 2008)). If the complaint is not signed, "the date of the postmark is the date

the petition is presumed filed." *Nolley v. Superintendent of Bare Hill*, No. 11-CV-6384, 2012 WL

2131891, *5 (W.D.N.Y. June 12, 2012).

    *2. Application*

    In the present matter, applying the prison mailbox rule, Magistrate Judge Lovric

determined that the date of commencement was not the date that the complaint was received by

the Clerk of the Court (March 21, 2016), but the date on the signature line of the complaint

(December 1, 2018), which is the date it was presumably put in the hands of prison officials.  Dkt.

No. 99 at 22.  As such, Magistrate Judge Lovric determined that "Plaintiff's claims related to

incidents that occurred on or after December 1, 2015, are timely, and those related to incidents

that occurred before December 1, 2015, are untimely." *Id.*  In both their underlying motion for

summary judgment and in their objections to the Report-Recommendation, Defendants argue that

Plaintiff was not entitled to the presumption that he put his complaint into the hands of prison

officials for mailing on the date it was signed because (1) the operative portion of the complaint is

unsigned and undated, (2) the envelope in which the complaint and affidavit were sent is

postmarked March 19, 2019, and (3) Plaintiff's notarized affidavit, submitted with the complaint,

is dated December 28, 2018.  *See* Dkt. No. 104 at 6.  The Court agrees with Defendants that

Plaintiff was not entitled to the presumption that his complaint was given to prison officials on the

date it was signed.

    As Defendants note, while the first half of Plaintiff's complaint is dated December 1, 2018,

the second half of the complaint, which contains the numbered paragraphs and the claims that

survived initial review, is undated.  *See* Dkt. No. 1 at 15, 25.  The affidavit that Plaintiff filed with

his complaint is dated December 27, 2018.  *See* Dkt. No. 1-4 at 7.  Moreover, exhibits attached to

Plaintiff's complaint are dated well after the December 1, 2018 signature date.  For example,

Plaintiff attached as an exhibit a letter from Deputy Commissioner Stephen Maher that is dated

January 30, 2019.  *See* Dkt. No. 1-1 at 1; *see also* Dkt. No. 1-2 at 108.  It necessarily follows that

Plaintiff could not have given his complaint to prison officials for mailing on December 1, 2018,

when exhibits attached to the complaint are dated January 30, 2019.  As such, the Court finds that

the filing date of Plaintiff's complaint was March 19, 2019, which is the date of the postmark on

the mailing envelope in which the complaint was mailed.  *See* Dkt. No. 1-9; *see Nolley v.*

*Superintendent of Bare Hill*, No. 11-cv-6384, 2012 WL 2131891, \*5 (W.D.N.Y. June 12, 2012)

("Ordinarily, in the absence of evidence to the contrary, the Court presumes that the date the

petition was signed is the date it was given to the appropriate prison authorities for mailing")

(citations omitted).  As such, all claims accruing before March 19, 2016, are subject to dismissal

unless an exception applies.[2]

### a. Continuing violation doctrine

"The continuing violation doctrine, however, creates an 'exception to the normal knew-or-

should-have-known accrual date.'"  *Sides v. Paolano*, 782 Fed. Appx. 49, 50 (2d Cir. 2019)

(quoting *Shomo*, 579 F.3d at 181).

> That doctrine "can apply when a prisoner challenges a series of acts
> that together comprise an Eighth Amendment claim of deliberate
> indifference to serious medical needs," but it may be invoked only
> on a showing "both [of] the existence of an ongoing policy of

---

[2]  The Court notes that all claims raised in the complaint, except those against Defendants Nolan and Pattison, arose before March 8, 2016.  Magistrate Judge Lovric, however, recommended that the claims against Defendants Nolan and Pattison be dismissed because Plaintiff failed to exhaust his administrative remedies as to those claims.

> deliberate indifference to his or her serious medical needs and some
> non-time-barred acts taken in the furtherance of that policy."

*Id*. (quoting *Shomo*, 579 F.3d at 182).

"To assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of [deliberate indifference to serious medical needs] and some non-time-barred acts taken in the furtherance of that policy." *Orlando v. Johnson*, No. 9:19CV1183, 2020 WL 7684949, *4 (N.D.N.Y. Oct. 5, 2020) (quoting *Shomo*, 579 F.3d at 181) (alterations in original) (internal quotation marks omitted). "Under this doctrine, the limitations period does not begin to run until the last act taken in furtherance of that policy." *Id*. (citing *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)). "[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred . . . act." *Id*. (quoting *Warren v. Sawyer*, No. 9:15-CV-0591, 2016 WL 1558460, *5 (N.D.N.Y. Apr. 15, 2016)).

Plaintiff objects to Magistrate Judge Lovric's failure to apply the continuing violation doctrine. *See* Dkt. No. 108 at 1. Plaintiff claims that the statute of limitations did not begin to run until March 26, 2016. Plaintiff argues that from September 22, 2015 to January 26, 2016 while incarcerated at Auburn C.F., he made repeated attempts to take his own life and without any medical attention in response. *See* Dkt. No. 1 at 16-20. Magistrate Judge Lovric recommended that summary judgment be granted as to Plaintiff's claims against Defendants Iqbal and Mayer, which involved incidents that occurred before December 1, 2015, and denied as to the claims against Defendants Mitchel and Pitaro, which accrued on December 21, 2015. Dkt. No. 99 at 20-21.

12

Magistrate Judge Lovric correctly noted that Plaintiff has not alleged the existence of an ongoing policy of deliberate indifference to his serious medical needs and, without such, the continuing violation doctrine does not apply. Dkt. No. 99 at 20 n.14; *see also Orlando*, 2020 WL 7684949, at \*4; *Warren*, 2016 WL 1558460, at \*5 ("Plaintiff's conclusory assertions that all of the actions of the defendants were taken pursuant to a policy does not suffice"). Rather, the alleged deliberate indifference were all discrete events. Therefore, all claims of deliberate indifference that took place prior to March 19, 2016, are untimely. Plaintiff's complaint does not allege any claims of deliberate indifference to his serious medical needs after March 19, 2016. *See* Dkt. No. 1.

As such, the Court finds that since all of Plaintiff's deliberate indifference claims accrued before March 19, 2016, and the continuing violation doctrine is inapplicable, Defendants are entitled to summary judgment on all such claims.

### *2. Eighth Amendment Excessive Force and Failure to Intervene Claims*

Plaintiff alleges Eighth Amendment violations against Defendants Yorkie, Girvin, Mitchel, Pyke, Fisher, Tarby, Smith, Thomas, Barber, Harte, Cooper, Dennis, Nolan, and Pattison based on the allegedly unnecessary force against him and failure to intervene and protect him from harm on December 1, 2015, December 3, 2015, December 21, 2015, and January 4, 2016, while he was confined at Auburn C.F. Dkt. No. 1 at 18-21. Magistrate Judge Lovric determined that these claims were timely based on the determination that the complaint was filed on December 1, 2018. *See* Dkt. No. 99 at 21. In their objections, Defendants contend that

13

Magistrate Judge Lovric erred in determining that these claims are not barred by the statute of limitations.  *See* Dkt. No. 104 at 7-8.

Again, the Court agrees with Defendants.  Plaintiff is not entitled to the presumption that his complaint was filed on December 1, 2015, because of the substantial evidence submitted with his complaint that is clearly dated much later.  Since these claims accrued no later than January 4, 2016, the complaint was not filed until March 19, 2019, and Plaintiff has not set forth any basis to apply the continuing violation doctrine or equitable tolling, they are untimely.  As such, the Court rejects the Report-Recommendation insofar as it recommends denying Defendants' motion for summary judgment as to these claims.

**C.    Exhaustion of Administrative Remedies**

Magistrate Judge Lovric concluded that Plaintiff failed to exhaust his administrative remedies "for the reasons stated in Defendants' memorandum of law."  Dkt. No. 99 at 21-22. Defendants moved for summary judgment on Plaintiff's First and Eighth Amendment claims against Defendants Pattison and Nolan asserting that Plaintiff failed to grieve the March 21, 2016 incident.  Dkt. No. 80-7 at 9-11.

The Prison Litigation Reform Act states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Inmates must exhaust all available administrative remedies even if they are seeking only money damages

that are not available in prison administrative proceedings.  *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016).  The failure to exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules.  *See Jones*, 549 U.S. at 218–19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  *See Woodford*, 548 U.S. at 90–103.

New York State has a three-step administrative review process, commonly referred to as the Inmate Grievance Program ("IGP").  First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), which reviews and investigates the formal complaint before issuing a written determination.  *See* 7 N.Y.C.R.R. § 701.5(b).  Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility.  *See id*. § 701.5(c).  Third, an adverse decision by the Superintendent may be appealed to the Central Office Review Committee ("CORC").  *See id*. § 701.5(d).  If all three levels of review are exhausted, then the prisoner may

seek relief in a federal court pursuant to section 1983.  *See Bridgeforth v. DSP Bartlett*, 686 F.

Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524).

      To the extent a civil rights claim must be exhausted by the grievance process, completion

of the three-tiered process, through and including a final decision by the CORC, must be

completed before an action asserting that claim may be filed in federal court.  *See, e.g., Casey v.*

*Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a

decision from CORC after commencing litigation does not satisfy PLRA's requirement that

administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to

commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d

116, 122–23 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516) (emphasis in

original); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012).

"[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the

time the action was commenced."  *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933,

*11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

      Plaintiff's complaint alleges that on or about March 21, 2016, Defendants Nolan and

Pattison "attacked [Plaintiff] with strike[s] to the body and skull."  *Id*.  During the assault,

Defendants used racial slurs and told Plaintiff that he should "stop writing" grievances or else he

would "find [himself] hung."  *Id*.

      Attica C.F. grievance records indicate that Plaintiff filed two grievances dated March 16,

2016 and one on March 24, 2016.  Dkt. No. 80-3 at 6.  CORC records show that Plaintiff only

appealed one grievance filed at Attica C.F., the March 16, 2016 grievance.  *Id*.  Plaintiff did not

appeal any other grievances.  *Id*.  Plaintiff objects to Magistrate Judge Lovric's recommendation, asserting that he fully exhausted his administrative remedies.  Dkt. No. 108 at 2.

The Court has reviewed the extensive filings submitted in support of Defendants' motion for summary judgment, as well as the grievances filed in 2015 and 2016, which were attached to Plaintiff's complaint.  Dkt. No. 1-2 at 20-107.  However, Plaintiff does not include a grievance for the alleged March 21, 2016 incident and Defendants have submitted competent evidence demonstrating that no appeal was taken from regarding any grievance involving the March 21, 2016 incident.  Plaintiff's conclusory allegations to the contrary are insufficient to create an issue of fact.  Therefore, Magistrate Judge Lovric correctly recommended that summary judgment on Plaintiff's First and Eighth Amendment claims against Defendants Pattison and Nolan must be granted.  The Court therefore adopts Magistrate Judge Lovric's Report-Recommendation as to this issue.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Report-Recommendation is **ADOPTED-in-part and REJECTED-in-part** for the reasons set forth herein; and the Court further

**ORDERS** Defendants' motion for summary judgment (Dkt. No. 80) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

ORDERS that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 28, 2021
       Albany, New York

Mae A. D'Agostino
U.S. District Judge